UNITED STATES DISTRICT COURT Eastern District of Kentucky
EASTERN DISTRICT OF KENTUCKY      F I L E D
LONDON                             APR 2 0 2005

                                     AT LONDON
                                   LESLIE G. WHITMER
                              CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-258-GWU


VERLIN MILLS,                                          PLAINTIFF,


VS.                    **MEMORANDUM OPINION**


JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Supplemental Security Income (SSI). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.      Is the claimant currently engaged in substantial gainful activity?
        If yes, the claimant is not disabled. If no, proceed to Step 2.
        See 20 CFR 404.1520(b), 416.920(b).

2.      Does the claimant have any medically determinable physical
        or mental impairment(s)? If yes, proceed to Step 3. If no, the
        claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.      Does the claimant have any severe impairment(s)--i.e., any
        impairment(s) significantly limiting the claimant's physical or
        mental ability to do basic work activities? If yes, proceed to
        Step 4. If no, the claimant is not disabled. See 20 CFR
        404.1520(c), 404.1521, 416.920(c), 461.921.

1

Mills

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        See 20 CFR 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)? If yes, the claimant is disabled.  If no, proceed
        to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d),
        416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?   If yes, the claimant was not
        disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e),
        416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.    See 20 CFR 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.   Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence. Jones v. Secretary of Health and

Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a

Mills

reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

Mills

symptoms.  20 CFR Section 404.1529 (1991).  However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

4

considered against the plaintiff, <u>Hale v. Secretary of Health and Human Services</u>, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

Mills

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Verlin Mills, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of chronic neck and shoulder pain, chronic low back pain, and dysthymia. (Tr. 17). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Mills retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 21-3). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of medium level exertion, and was non-exertionally limited in that he had "some difficulty" climbing ladders, ropes, and scaffolds and "some difficulty" reaching

7

with his arms, and would require low stress work that involved only simple, non-detailed tasks, where contact with co-workers and the public was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the workplace were gradually introduced. (Tr. 332). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 333).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Mills alleged disability due to pain in his back, legs, feet, neck, and shoulder, and "stress." (Tr. 53). Medical records show that he was treated in an emergency room in October, 1999, after a fall of nine feet onto concrete, although the only clear abnormality found at that the time was a minimal fracture of the sixth rib. (Tr. 104, 110). Mr. Mills was treated a year later, in October, 2000, by Dr. William Brooks, a neurosurgeon, because of complaints of neck and left shoulder pain related to the fall. (Tr. 117). Dr. Brooks' examination did show a limited range of motion in the cervical and lumbar areas, and Mr. Mills had an "audible and palpable" popping in the left shoulder, but there was no weakness, sensation was intact, reflexes were symmetrical, and his gait was normal. (Id.). Dr. Brooks obtained an MRI of the cervical spine, which was normal, and of the left shoulder,

8

which showed no evidence of a rotator cuff tear, but did show mild tendinopathic changes. (Tr. 120). Dr. Brooks concluded that the plaintiff's symptoms were musculoligamentous in nature, and released him from his care with no restrictions suggested. (Tr. 115-16).

Another physician, Dr. Epperson, obtained a nerve conduction study for left shoulder pain which was read as showing some abnormalities, although "technical factors" were suspected as affecting the reading, and clinical correlation was suggested. (Tr. 151-3). Dr. Epperson suggested physical therapy and provided medication, but did not issue any legible functional restrictions. (Tr. 149-50).

Dr. Greg Wheeler, another neurosurgeon, examined the plaintiff in April, 2002, noting his complaints of spinal, neck, left shoulder, left arm, and bilateral leg pain resulting from the October, 1999 injury. (Tr. 158). Dr. Wheeler found that Mr. Mills' sensation and reflexes were intact; there was normal range of motion of the neck with no spasm; the lumbar spine was not tender, had no spasm, and a normal range of motion; and straight leg raising was also normal. (Id.). He reviewed the cervical spine MRI from October, 2001, and agreed that it was unremarkable. (Id.). He suggested obtaining more tests, and considering a referral to an orthopedist. (Id.). No functional restrictions are given.

Dr. Roy Stauffer conducted a consultative examination of the plaintiff on April 24, 2002. (Tr. 165). His examination did show cervical spine tenderness, with range

9

of motion done slowly secondary to pain. (Tr. 166). There was lumbar spine tenderness, but the plaintiff could perform straight leg raising to 90 degrees bilaterally. (Tr. 167). The shoulders were not tender, but there was a decrease in flexion and abduction of both shoulders, the right more than the left. (Id.). Motor strength, grip, reflexes, and heel/toe walking were within normal limits. (Id.). Dr. Stauffer concluded that the plaintiff's complaints overall were mildly out of proportion to the physical findings, and that Mr. Mills could perform medium level exertion, stand and walk six hours in an eight-hour day, sit six hours in an eight-hour day, and would have an unlimited ability to push and pull. (Id.). He would have some difficulty climbing ladders, ropes, and scaffolds and reaching with his arms, but would have no handling, fingering, or feeling limitations, and no visual, communicative, or environmental limitations. (Tr. 167-8). These were the restrictions accepted by the ALJ and given in the hypothetical question.

Dr. Gopal Rastogi conducted a consultative examination of the plaintiff in September, 2002 and found a reduction in the range of motion of the neck, normal left shoulder range of motion but with pain, and forward flexion limited to only 45 degrees. (Tr. 184-5). Mr. Mills was able to squat and get up, had no muscle wasting or sensory loss, and reflexes were present. (Id.). Straight leg raising was positive at 30 degrees on the left and 45 degrees on the right. (Id.). Dr. Rastogi obtained no studies and did not review any previous records. He concluded that Mr. Mills was

10

not able to engage in any work-related activity and could not drive for long periods and was "not fit for gainful employment."

The plaintiff sought treatment at the office of Dr. Talmadge Hays beginning in June, 2001, after a brief hospitalization for prostatitis and a urinary tract infection. (Tr. 131, 241). Dr. Hays summarized the plaintiff's condition regarding his shoulder, but opined that he did not "have a lot to offer him," and no functional restrictions were given. (Tr. 241). Subsequent notes indicate that the plaintiff was most often seen by a nurse practitioner, who found no neurological abnormalities, and although anxiety and back pain were diagnosed by Dr. B. J. Kidd, also in Dr. Hays' office, who provided left shoulder injections, his physical findings were not revealing. (Tr. 219-40).

State agency physicians who reviewed a portion of the record concluded that the plaintiff would have a functional capacity consistent with the ALJ's hypothetical question. (Tr. 293-311). Since the only clear evidence of greater restriction was from a one-time examiner, Dr. Rastogi, who was not entitled to greater weight than Dr. Stauffer, substantial evidence supports the ALJ's choice of hypothetical factors.

As far as the plaintiff's mental status was concerned, although anxiety was diagnosed at the time of the plaintiff's hospital admission for prostatitis (Tr. 131), and he was eventually provided with Effexor by the nurse practitioner in Dr. Hays office (Tr. 220), the only mental functional restrictions come from one-time examiners.

Mills

Dr. C. Vora, a psychiatrist, examined Mr. Mills in April, 2002 and diagnosed dysthymia, and "rule out" organic mood disorder, with a Global Assessment of Functioning (GAF) score of 55. (Tr. 163). A GAF score in this range reflects moderate symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision) (DSM-IV-TR), p. 34. Dr. Vora opined that Mr. Mills had a "fair" ability to understand, remember, and follow instructions, to sustain attention to perform simple repetitive tasks, and to relate to others. (Tr. 164). His ability to withstand stress and pressures of day-to-day work activity was "poor." (Id.).

Reba Moore, a psychologist, examined Mr. Mills in September, 2002 and also administered intelligence testing showing a full-scale IQ score of 83, high school level reading, and sixth-grade level arithmetic. (Tr. 178-9). She diagnosed major depressive disorder without psychosis, a generalized anxiety disorder, alcohol dependence in full remission, and borderline intellectual functioning. (Tr. 180). However, her GAF score was 60, also reflecting a moderate impairment. (Id.). She prepared a mental residual functional capacity assessment form indicating that the plaintiff had a "seriously limited but not precluded" ability to deal with work stresses, function independently, maintain attention and concentration, and understand, remember, and carry out complex job instructions. (Tr. 182-3).

The ALJ rejected Reba Moore's conclusions. As a one-time examiner, she was not entitled to greater weight than the other one-time examiner, Dr. Vora. The

12

Mills

ALJ's hypothetical question, although not precisely tracking the language used by Dr. Vora or by state agency psychologists who reviewed the record (Tr. 282-89), was not blatantly incompatible, either, and the plaintiff has not raised this issue on appeal.[1]

The decision will be affirmed.

This the _____20_____ day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE

_____

[1]In fact, the plaintiff's brief raises no issue and concludes with the statement that the claimant has <u>not</u> carried his burden of proving he cannot perform his past relevant work, presumably a typographical error. <u>Plaintiff's Brief in Support of His Motion for Summary Judgment</u>, Docket Entry No. 9, p. 8.